**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

FERNEY DARIO RAMIREZ,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:15-cv-29

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Ferney Ramirez ("Ramirez"), who is currently housed at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 7.) Ramirez filed a Traverse. (Doc. 8.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Ramirez's Petition in part, **DENY** Ramirez's Petition in part, **CLOSE** this case, and **DENY** Ramirez *in forma pauperis* status on appeal.

## BACKGROUND

Ramirez was convicted in the Southern District of New York of conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 846, 812, and 841, and was sentenced to 210 months' imprisonment. (Doc. 7-2, p. 3.) He has a projected release date of January 15, 2019, via good conduct release. (Id.)

## DISCUSSION

Ramirez received an incident report while he was housed at the Adams County Correctional Facility in Natchez, Mississippi, on December 10, 2013.[1] (Doc. 1, p. 3.) On this date, a counselor was conducting sanitation rounds in the Delta Bravo housing unit and noticed a towel hanging over Ramirez's bed. (Id.) The counselor removed the towel and was walking away when Ramirez grabbed the counselor's jacket and asked why the counselor had taken his towel. Ramirez informed the counselor she should have used a glove and then hung the towel on his bed. (Id.) Ramirez was charged with assault without serious injury, a Code 224 violation. Ramirez received this incident report on December 10, 2013, which was then investigated. After investigation, the incident report was forwarded to the Unit Disciplinary Committee ("UDC") for a hearing. (Id.)

On December 11, 2013, the UDC conducted a hearing, during which Ramirez admitted touching the counselor but stated he did not intend to harm her. (Doc. 7, p. 6.) Based on the severity of the allegation, the UDC referred the matter to a hearing before a Disciplinary Hearing Officer ("DHO"). Ramirez received notification of the DHO hearing and a notice of his rights at this hearing on December 11, 2013. Ramirez opted not to call any witnesses or make use of his right to staff representation at that time. (Id.) However, when DHO Brett Bradford convened the hearing on January 16, 2014, Ramirez stated he had two witnesses to the incident; thus, DHO Bradford postponed the hearing until February 11, 2014.[2] (Id.) During the hearing, Ramirez asserted that the counselor's statements were "somewhat accurate." (Id. at p. 7.)

---

[1] The BOP contracts with GEO Group, Inc., to house low security criminal alien inmates at D. Ray James Correctional Institution and Adams County Correctional Facility. (Doc. 7, pp. 1–2.)

[2] Ramirez's DHO hearing was originally scheduled for December 18, 2013. (Doc. 7-2, p. 33.) As discussed below, even if his hearing had been held on December 18, 2013, the due process notice requirement still would have been met.

DHO Bradford determined Ramirez was guilty of the Code 224 violation and recommended Ramirez be sanctioned with, *inter alia*, disallowance of 17 days good conduct time. (Doc. 1, p. 3.) DHO Bradford forwarded his DHO report to the DHO Oversight Specialist with the Bureau of Prisons' ("BOP") Privatization Management Branch in Washington, D.C., who found that the recommended sanctions were appropriate and that the hearing complied with due process. (Doc. 7, pp. 7–8.) DHO Bradford gave Ramirez the DHO report on February 24, 2014, and was given a corrected version of the report on March 27, 2014.[3] (Id. at p. 8.)

In his Petition, Ramirez contends the investigation was conducted by a Corrections Corporation of America employee, in contravention of BOP policy. (Doc. 1, p. 4.) Ramirez maintains this raises the question of the validity of the disciplinary process and the question of the authority of a non-BOP employee's authority to issue sanctions. Ramirez seeks to have the DHO's imposed sanctions against him dismissed and to have his good conduct time restored. (Id.)

Respondent contends Ramirez did not exhaust his administrative remedies prior to filing his Petition. (Doc. 7, pp. 9–10.) In addition, Respondent avers Ramirez received the appropriate due process protections during the disciplinary proceedings. (Id. at pp. 10–13.) Further, Respondent maintains the BOP did not unlawfully delegate its authority to impose inmate discipline to staff at Adams County Correctional Facility. (Id. at pp. 13–14.)

The Court addresses each of these contentions in turn.

---

[3] The reason Bradford provided Ramirez with a corrected version of his findings was to correct typographical errors contained in his original findings. Ramirez was advised of the revisions and that he did not need to resubmit his appeal. (Doc. 7-2, p. 53.)

**I.      Whether Plaintiff Exhausted his Available Administrative Remedies**

"[P]risoners seeking habeas relief, including relief pursuant to [28 U.S.C.] § 2241," must exhaust all available administrative remedies. Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004).  If a petitioner fails to exhaust his administrative remedies before seeking redress in the federal courts, the court should dismiss the case for want of jurisdiction.  Winck v. England, 327 F.3d 1296, 1300 n.1 (11th Cir. 2003) (citing Simpson v. United States, 959 F.2d 211, 212 (11th Cir. 1992)).  "Also jurisdictional is '[t]he general rule . . . that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued.'"  Id. (quoting Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001)).

In Porter v. Nussle, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  534 U.S. 516, 523 (2002).  The Supreme Court has noted exhaustion must be "proper."  Woodford v. Ngo, 548 U.S. 81, 92 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90–91.[4]  In other words, an institution's requirements define what is considered exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

---

[4] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits."  Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted).  Thus, exhaustion requirements are applicable to habeas petitions.

4

Inmates at Adams County Correctional Facility contesting DHO matters in which good conduct time is disallowed or forfeited must appeal directly to the Privatization Management Branch of the BOP. (Doc. 7-2, pp. 42–43.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel within 30 days of the denial. (Id. at p. 45.) If an inmate files an administrative remedy concerning a BOP related matter[5], the administrative remedies will be recorded in the BOP's SENTRY computer database. Pichardo, CV511-69, 2011 WL 5102814, at *2.

Respondent asserts Ramirez filed his initial administrative remedy appeal on March 18, 2014, and his appeal was denied on March 27, 2014. (Doc. 7, p. 9.) Respondent alleges Ramirez was required to file an appeal with the BOP's National Appeals Administrator within thirty days, or on or before April 26, 2014, for his appeal to be considered timely. Instead, Respondent contends Ramirez filed his final appeal on March 9, 2015, well after his thirty-day deadline. Respondent states Ramirez's appeal was rejected as untimely. (Id. at p. 10.) Accordingly, Respondent avers Ramirez failed to exhaust his administrative remedies prior to filing his Petition.

Ramirez asserts he exhausted his administrative remedies by sending his final appeal on February 28, 2015, after he was released from the Special Housing Unit and then transferred to D. Ray James Correctional Facility. (Doc. 1, p. 5.) Ramirez alleges he did not receive a response to his appeal within forty days, as required by policy, and was told to consider his appeal denied. (Id.)

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of

---

[5] Examples of BOP-related issues are classification, designation, sentence computation, and removal or disallowance of good conduct time. (Doc. 7-2, p. 43.)

5

administrative remedies.[6] First, the court is to take the petitioner's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the petitioner's version of the facts, the petitioner's has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether the petitioner has exhausted, the court need not accept all of the petitioner's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion as long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

Taking Ramirez's assertions that he could not file a final appeal before he did as true, he exhausted his administrative remedies prior to filing suit. According to Ramirez, he could not file his final grievance any sooner than he did because he was in the Special Housing Unit and then was transferred.

However, when proceeding to the second Turner step and looking at the parties' submissions, it is clear Ramirez did not exhaust his administrative remedies prior to the filing of this Petition. Ramirez was housed at the Adams County Correctional Facility from July 19, 2012, until he was transferred to D. Ray James Correctional Facility on October 29, 2014. (Doc. 7-2, p. 6.) Ramirez timely filed an appeal of the DHO proceedings with the Privatization Management Branch, and he received a response to this appeal on March 27, 2014. (Doc. 1-1,

---

[6] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards in a Section 2241 petition).

6

p. 15.) If Ramirez was housed in a Special Housing Unit while he was housed at Adams County after he received his appeal response (which is not indicated by his Inmate History printout) until his transfer to D. Ray James, Ramirez could have filed his final appeal upon his arrival at D. Ray James on October 31, 2014. Ramirez did not sign his final appeal until February 28, 2015, (doc. 1-1, p. 16), and it was not received at the National Appeals Administrator's Office until March 9, 2015, (doc. 7-2, p. 59). Ramirez inexplicably waited four months' time to sign this final appeal form after his arrival at D. Ray James. Alternatively, if Ramirez was placed in a Special Housing Unit after he arrived at D. Ray James, he still would have had from March 27, 2014, until his transfer out of Adams County on October 29, 2014, to file a final appeal. Ramirez failed to do so. Consequently, under either scenario, Ramirez failed to exhaust his administrative remedies prior to filing this Petition, and the Court should dismiss his Petition as a result.

While this conclusion would ordinarily end the Court's discussion, the Court anticipates Ramirez may raise in his Objections to this Report an argument that he was housed in a Special Housing Unit at both facilities. Thus, it could be that Ramirez did exhaust the administrative remedies which were available to him prior to filing this Petition. Consequently, as a matter of judicial economy, the Court will address the relative merits of Ramirez's Petition.

**II.    Whether Due Process Requirements Were Met**

Respondent asserts that the due process requirements were met in Ramirez's DHO proceedings. (Doc. 7, p. 9.) Respondent asserts Ramirez received a copy of the incident report on December 10, 2013, the same date it was written. (Id. at p. 11.) Respondent alleges Ramirez had his hearing before the UDC on December 11, 2013, and he was notified on the same date of his DHO hearing and of his rights at the hearing. (Id. at p. 12.) Respondent contends Ramirez

received a copy of the DHO's findings on February 24, 2014, and the findings were reissued on March 27, 2014, after the DHO made some "minor typographical edits[.]" (Id.) Finally, Respondent avers there is some evidence of record supporting the DHO's finding of guilt. (Id. at p. 13.)[7]

To determine whether Ramirez's right to due process was violated, it must be determined what process was due to Ramirez during the disciplinary hearing process. A prisoner has a protected liberty interest in statutory good time credits, and, therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him, (2) is given the opportunity to call witnesses and present documentary evidence, and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67). Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011).

---

[7] Ramirez does not specifically challenge whether due process requirements were met. Rather, he espouses his alleged innocence of the charged Code 224 violation. (Doc. 1, pp. 5–6.)

"Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted). In addition, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

As detailed above, Ramirez's disciplinary hearing was conducted initially on January 16, 2014, and he was notified of the charges against him on December 11, 2013, which was more than 24 hours prior to the hearing before the DHO. Thus, the first Wolff factor was met. The second Wolff factor was met on January 16, 2014, when Ramirez was made aware of his right to call witnesses and to present documentary evidence. The third Wolff factor was met when Ramirez received written notice of DHO Bradford's decision on February 24, 2014. In addition, a review of DHO Bradford's findings reveals that there is "some evidence" to support his finding that Ramirez committed the Code 224 violation. Specifically, DHO Bradford made his findings based on Ramirez's and his witness' statements during the hearing, as well as the documentary evidence before him. Accordingly, Ramirez received all of the due process protections afforded him during the disciplinary proceedings, and any contentions to the contrary are without merit. Thus, this portion of Ramirez's Petition should be **DENIED**.

### III.     Whether the DHO was Authorized to Impose Sanctions

To determine whether DHO Bradford was authorized to impose sanctions against Ramirez, the Court must look to the applicable statutes and regulations. The BOP is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of

offenses against the United States." 18 U.S.C. § 4042(a)(3). The BOP's authority in this area may include contracting out the care of prisoners to private facilities. 18 U.S.C. § 4013(a)(3). The relationship between the federal government and facilities which house federal inmates pursuant to contract has been described as follows:

> Even though the federal government may enter into contracts with a local agency for imprisonment of federal prisoners, 'no federal agency or officer thereof has any authority to exercise any control over the day to day management of the local institution or over the details of the custody and care of federal prisoners confined therein.'. . . . 18 U.S.C. § 4001(b)(1), [provides] that '[t]he control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws. Therefore, when the Attorney General is not permitted to fulfill this role with respect to a penal facility, even when a contract for usage of that facility exists, the facility cannot properly be categorized as a [f]ederal prison."

United States v. Cardona, 266 F. Supp.2d 558, 560 (W.D. Tex. 2003) (internal citations omitted).

It appears that the BOP has no direct or constructive control over managerial functions at the Adams County Correctional Facility, and the Court agrees that the Adams County Correctional Facility is not a "federal" prison. However, it must be determined whether staff at Adams County Correctional Facility, as a non-federal facility, may nevertheless impose disciplinary sanctions as delegated by the BOP. "It is well-established that federal agencies may not delegate their statutory authorities to private parties. However, '[t]he ultimate test of the validity of an agency's delegation of responsibility to a private party is whether the delegating agency retains final decision-making authority.'" R. & R., Caraballo-Rodriguez v. Pugh, 3:04-cv-81 (S.D. Ga. Mar. 23, 2005) (citing Ocean Conservancy v. Evans, 260 F. Supp. 2d 1162, 1183 (M.D. Fla. 2003)), ECF No. 12.

Here, the BOP is charged with making a final determination as to whether disciplinary proceedings are proper. Because the BOP has retained final decision-making authority in the

10

imposition of disciplinary sanctions, it has not unlawfully delegated its authority to Adams County Correctional Facility staff. See 28 C.F.R. § 541 (federal regulations pertaining to inmate discipline); see also Program Statement 5720.09 (stating that it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with the BOP's rules in order for inmates to live in a safe and orderly environment). In fact, DHO Bradford submitted his findings and recommended sanctions to a DHO Oversight Specialist with the BOP's Privatization Management Branch for review. Gerald Johnson informed DHO Bradford that the DHO report was reviewed and found to be in compliance with due process requirements, and that the recommended sanctions were in accord with Program Statement 5270.09. (Doc. 7-2, p. 39.) Because the BOP retained final decision-making authority, Ramirez is not entitled to his requested relief on this ground. Based on this reason, this portion of Ramirez's Petition should be **DENIED**.

### IV. Leave to Appeal *In Forma Pauperis*

The Court should also deny Ramirez leave to appeal *in forma pauperis*. Though Ramirez has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Ramirez's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** in part and **DENY** in part Ramirez's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Ramirez leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Ramirez and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of March, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA